1                 UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS (Boston)

3                             No. 1:20-cr-10098-WGY

4

5

6    UNITED STATES OF AMERICA

7

8    vs.

9

10   STEPHANIE POPP and VERONICA ZEA

11

12                         * * * * * * * * *

13

14                    For Zoom Hearing Before:
                      Judge William G. Young

15

16                         Plea Change

17

18                    United States District Court
                      District of Massachusetts (Boston)
                      One Courthouse Way

19                    Boston, Massachusetts 02210
                      Thursday, October 8, 2020

20

21                         * * * * * * * *

22

23            REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
                      United States District Court

24        One Courthouse Way, Room 5510, Boston, MA 02210
                      bulldog@richromanow.com

25

```
1                    A P P E A R A N C E S

2

3    SETH B. KOSTO, ESQ.
        United States Attorney's Office MA
4        1 Courthouse Way, Suite 9200
        Boston, MA 02210
5        (617) 748-3230
        Email: Seth.kosto@usdoj.gov
6        For the government

7

8    ADAM J. BOOKBINDER, ESQ.
     RACHNA VYAS, ESQ.
9        Choate Hall & Stewart
        2 International Place
10       Boston, MA 02110
        (617) 248-4868
11       Email: Abookbinder@choate.com
        For Defendant Stephanie Popp
12

13
     FRANK R. UBHAUS, ESQ.
14       Berliner Cohen LLP
        Ten Almaden Boulevard
15       Eleventh Floor
        San Jose, CA 95113-2233
16       (408) 286-5800
        Email: Frank.ubhaus@berliner.com
17       For Defendant Veronica Zea

18

19

20

21

22

23

24

25
```

```
1            P R O C E E D I N G S
2            (Begins, 2:00 p.m.)
3            THE CLERK:  Criminal Number 20-10098, the United
4      States of America versus Stephanie Popp and Veronica
5      Zea.
6            THE COURT:  Good afternoon counsel.  This is a
7      hearing that we are handling on our zoom platform, it's
8      being hosted by Courtroom Deputy Clerk, Jennifer Gaudet,
9      and I have my Court Reporter, Rich Romanow, on the line.
10     It is an official court proceeding and so it is open to
11     the press and public.  And I must say I don't know if
12     any members of the press or public are present, but if
13     they are, they are welcome.  But I must instruct you
14     that you have to keep your microphone muted and that the
15     rules of court remain in full force and effect, and that
16     is to say there is no rebroadcast, streaming, taping,
17     recording, or other transmission of this proceeding.
18           THE COURT:  Now with that said, could counsel
19     introduce themselves and who they represent, starting
20     with the government.
21           MR. KOSTO:  Good afternoon, your Honor, my name is
22     Seth Kosto, I'm an Assistant United States Attorney on
23     behalf of the government.
24           THE COURT:  Good afternoon, Mr. Kosto.
25           And for Ms. Popp?
```

1          MR. BOOKBINDER:  Good afternoon, your Honor, I'm

2     Adam Bookbinder from Choate Hall & Stewart, and with me

3     is Rachna Vyas, for Ms. Popp.

4          THE COURT:  And Ms. Popp is present on the line?

5          MR. BOOKBINDER:  She is.

6          THE COURT:  Thank you.

7          And for Ms. Zea?

8          MR. UBHAUS:  Yes, your Honor, Frank Ubhaus, and

9     good morning, and with me is my client Veronica Zea who

10    is sitting here across the table.

11         THE COURT:  Thank you.  Because we are proceeding

12    by way of zoom, I need to get the consent of each of the

13    individuals to proceeding by way of zoom.  So let me

14    start by, um --

15         Mr. Bookbinder, you have no objection if I talk

16    directly to your client, do you?

17         MR. BOOKBINDER:  I do not.

18         THE COURT:  All right.

19         Ms. Popp, can you identify yourself?

20         MS. POPP:  Yes, your Honor, I'm right here.

21         THE COURT:  All right.

22         Now we're doing this by this zoom device, but you

23    have a right to come into open court and be arraigned on

24    these charges and enter your plea -- that will take me a

25    couple of days, but we're fully able to do that.  So I

```
 1    do want to ask you -- and I don't want to know what
 2    passes between you and your attorneys, but have you
 3    talked all over with your attorneys this proceeding by
 4    way of zoom?
 5            MS. POPP:  Yes, I have, your Honor.
 6            THE COURT:  And is that -- are you content to do
 7    it that way?
 8            MS. POPP:  Yes, I am, your Honor.
 9            THE COURT:  Very well.
10            And, Ms. Zea, can you identify yourself, ma'am.
11            MS. ZEA:  Yes, I'm Veronica Zea.
12            THE COURT:  Yes, Ms. Zea.  I'm sorry.
13            It's the same question.  In order to proceed by
14    way of zoom, I need your consent, and I can do this in
15    open court.  I mean you have to come to court, but I can
16    set it up.  You have a right to be in open court.
17            Now have you talked it all over with Mr. Ubhaus,
18    um, going ahead this afternoon by way of zoom?
19            MS. ZEA:  Yes, sir.
20            THE COURT:  And is that how you want to proceed
21    here?
22            MS. ZEA:  Yes, sir.
23            THE COURT:  All right, I find that Ms. Popp and
24    Ms. Zea both, knowingly and intelligently and
25    voluntarily, consent to proceeding by way of zoom.
```

1    Under our court rules, I must make a finding and I'll

2    proceed to do that.

3           These types of proceedings are authorized by

4    Congressional statute through the U.S. Cares Act and

5    implemented by regulations of the United States Judicial

6    Conference.  In this court they are authorized by order

7    of our Chief Judge Dennis Saylor upon unanimous vote of

8    the court.  That order requires me to find that it is in

9    the interests of justice so to proceed.  And I do now

10   find that it is.

11          And we -- I understand, but let me ask.

12   Mr. Bookbinder, I understand your client is prepared to

13   tender a plea of guilty when arraigned, is that correct?

14          MR. BOOKBINDER:  That is, your Honor.

15          THE COURT:  And, Mr. Ubhaus, the same is true for

16   Ms. Zea when she is arraigned, correct?

17          MR. UBHAUS:  That is correct, your Honor.

18          THE COURT:  Then the way I'm going to do this is

19   both individuals may be sworn and we can proceed.

20          THE CLERK:  Ms. Popp, Ms. Zea, please raise your

21   right hand.

22          (BOTH DEFENDANTS, sworn.)

23          THE COURT:  Very well.

24          Now, Ms. Popp, I'm going to talk collectively to

25   you both and when I need your individual responses I

1    will inquire of you individually.

2         My name is Bill Young, I'm the judge who presides

3    in this session of the court.  If when arraigned you

4    plead guilty, I will be the judge who imposes the

5    sentence.

6         Now when I've asked your lawyers, they've said

7    that each one of you wants to plead guilty.  Before I

8    can allow you to plead guilty -- and it is up to me, I

9    have to find out a variety of things.  I have to find

10   out that you know what you're doing.  I have to find out

11   that you know what rights you're giving up because you

12   give up terribly important rights if you plead guilty.

13   I have to find out that you know what you're letting

14   yourself in for, what may happen to you if you plead

15   guilty.  I have to be sure that you want to plead

16   guilty.

17        Now, just like this business about going ahead by

18   way of zoom, you truly are in charge here, each one of

19   you individually.  You don't have to plead guilty.  And

20   if at any time as we go along here you decide you don't

21   want to plead guilty, all you have to do is say so.

22        And I want to say something about that.  If you

23   decide not to plead guilty -- oh, I see that there's

24   plea agreements here and the like, but if you decide not

25   to plead guilty, I'm not upset, it doesn't mess up my

1    afternoon, it's not going change anything.  Now, if you

2    go to trial and you're found guilty, well I may well

3    punish you, but I'll punish you only for the crime or

4    crimes of which you're found guilty.  Never will I

5    punish you -- not one day, never will I punish you

6    because you went to trial, because a trial is one of

7    those rights you have, a constitutionally-guaranteed

8    right.

9         Now -- so I have to find out that you really want

10   to plead guilty, you, each one of you wants to plead

11   guilty -- not the attorneys, not your family, not

12   anybody else, you've decided what you want to do.

13        And then lastly I have to find out that the

14   government has enough evidence that if we went to trial,

15   in each of your cases, you could be found guilty of one

16   or more of these charges.  Now the way I'm going to find

17   these things out is by asking you questions.  If you

18   don't understand something I'm asking you, stop me, I

19   have to ask it in a way that you understand.  If at any

20   time you want to talk privately with your lawyer, just

21   say so.  We have time here.  We can mute things.  You

22   can step away from the camera, you can assure yourself

23   that you're talking privately, and you can get the

24   counsel of your lawyer as we go along here.

25        So, um, having said that, Ms. Popp, do you

1  understand these things?

2       (Silence.)

3       THE COURT:  Ms. Popp?

4       MS. POPP:  Yes, your Honor, I do understand.

5       THE COURT:  And, Ms. Zea, do you understand these

6  things?

7       MS. ZEA:  Yes, your Honor.

8       THE COURT:  All right.  Now let's start

9  individually on the "Do you understand what we're

10 doing?" and we'll start with Ms. Popp.

11      THE COURT:  How old are you, ma'am?

12      MS. POPP:  I am 33 years old.

13      THE COURT:  How far did you go in school?

14      MS. POPP:  I earned my bachelor's degree.

15      THE COURT:  And have you ever been treated for any

16 mental condition or illness of any sort?

17      MS. POPP:  Yes, I have.

18      THE COURT:  Would you just tell me what the

19 diagnosis was?

20      MS. POPP:  Um, depression and anxiety.

21      THE COURT:  And are you being treated for that

22 now?

23      MS. POPP:  Yes, I am.

24      THE COURT:  How, if I may, ask are you being

25 treated?

```
1            MS. POPP:  By medication?

2            THE COURT:  Yes.  All right.

3            MS. POPP:  Yes, I am.

4            THE COURT:  All right.  Are you taking the

5    medication as prescribed?

6            MS. POPP:  Yes, I am.

7            THE COURT:  And how do you feel today?

8            MS. POPP:  (Pause.)  Under the circumstances, I'm

9    okay.

10           THE COURT:  That's a very straight answer and I

11   appreciate it.  I can understand being nervous, this is

12   a very serious matter, but do you truly understand these

13   things that I've explained to you?

14           MS. POPP:  I do, I fully understand everything you

15   have explained to me, your Honor.

16           THE COURT:  And you know you can stop at any time

17   if you want to?

18           MS. POPP:  Yes, I understand that.

19           THE COURT:  And you can talk with your lawyer any

20   time you want to?

21           MS. POPP:  Yes, I understand that, your Honor.

22           THE COURT:  All right.

23           Other than the medication you're taking as

24   prescribed, are you taking any other medication for any

25   other condition?
```

```
 1            MS. POPP:  No, I am not.

 2            THE COURT:  Are you under the influence of

 3       alcohol?

 4            MS. POPP:  I am not.

 5            THE COURT:  Are you under the influence of any

 6       drug?

 7            MS. POPP:  I am not.

 8            THE COURT:  All right.  We'll go to Ms. Zea.

 9            Ms. Zea, how old are you, ma'am?

10            MS. ZEA:  I'm 26 years old.

11            THE COURT:  How far did you go in school?

12            MS. ZEA:  I have a bachelor's degree.

13            THE COURT:  Have you ever been treated for any

14       mental illness or condition?

15            MS. ZEA:  Yes.

16            THE COURT:  And would you tell me?

17            MS. ZEA:  Um, depression, anxiety, um, ADHD, and

18       general trauma disorder.

19            THE COURT:  And general --

20            MS. ZEA:  I forget the name, stress or --

21            MR. UBHAUS:  PTSD?

22            MS. ZEA:  Yes, PTSD.

23            MR. UBHAUS:  Post-traumatic stress.

24            THE COURT:  Yes, thank you.

25            And how are you treated?
```

```
 1          MS. ZEA:  Um, medication and therapy.

 2          THE COURT:  And are you taking your medications as

 3     prescribed?

 4          MS. ZEA:  Yes.

 5          THE COURT:  And you've taken them when you were

 6     supposed to take them before this hearing today?

 7          MS. ZEA:  Yes.

 8          THE COURT:  And how do you feel today?

 9          MS. ZEA:  Um, under the circumstances, okay.

10          THE COURT:  So I take by that you're nervous but

11     you know what you're doing and you understand those

12     things that I've explained, is that correct?

13          MS. ZEA:  Yes, your Honor.

14          THE COURT:  Are you taking any other medication?

15          MS. ZEA:  No.

16          THE COURT:  Are you under the influence of

17     alcohol?

18          MS. ZEA:  No.

19          THE COURT:  Are you under the influence of any

20     drug?

21          MS. ZEA:  No.

22          THE COURT:  Well now we'll stick with you,

23     Ms. Zea.

24          Do you know what you're charged with?

25          MS. ZEA:  Yes.
```

1          THE COURT:  And this isn't a test, but tell me

2     what you think you're charged with?

3          MS. ZEA:  Um, conspiracy to cyberstalk and

4     obstruction of justice.

5          THE COURT:  Now, um --

6          And, Ms. Popp, do you understand what you're

7     charged with?

8          MS. POPP:  Yes, I do.

9          THE COURT:  Tell me what you understand.

10          MS. POPP:  I'm being charged for conspiracy of

11     cyberstalking, conspiracy of tampering with a witness.

12          (Pause.)

13          THE COURT:  Well now, Ms. Popp, since I'm talking

14     to you, I'm going to stick with you for a moment.  And

15     let's just -- well you're both charged with conspiracy

16     to cyberstalk, so let's go over what it is that the

17     government has to prove before you could be found guilty

18     of that charge.

19          In order to prove you guilty of conspiracy to

20     cyberstalk, the government has to prove three things.

21     All right?  You're both charged with the same crime.

22     The government has to prove that you, each one of you,

23     knowing what you were doing, entered into an agreement

24     with one of the others -- not just Ms. Zea, but there's

25     Ms. Stockwell and Mr. Gilbert, and perhaps other people,

1    that you entered into an agreement with one or more of

2    these people to do something that the law forbids.

3          You're not guilty of conspiracy just because you

4    had the same employer or because you worked in the same

5    office or because you were friends or because you knew

6    that other people were, um, engaging in cyberstalking or

7    planning to engage in cyberstalking and you did nothing

8    about it, that doesn't make you guilty of conspiracy.

9    The first thing the government has to prove, and they

10   have to prove it as to each one of you separately, is

11   that you, knowing what you were doing, entered into an

12   agreement to cyberstalk.

13         The second thing that the government has to prove

14   is the specific intent of the agreement.  This is not a

15   charge of conspiracy to receive stolen refrigerators,

16   this is a conspiracy to commit cyberstalking.  So your

17   specific role -- not just yours, but that of yours and

18   that of at least one of the other conspirators, has got

19   to be to commit cyberstalking.  The government doesn't

20   have to prove that you succeeded, the government has to

21   prove that you conspired to do that particular crime.

22         The agreement doesn't have to be in writing.  I

23   see the agreement here and they're like contracts, you

24   do what you're supposed to do, the government has to do

25   what it's supposed to do.  But a conspiracy doesn't have

1    to be in writing, it doesn't have to be a handshake, it

2    doesn't have to be a wink or a nod, but it has to be a

3    genuine agreement with a specific intent to cyberstalk.

4         So a word about cyberstalking.  The goal has got

5    to be to harass, intimidate, to use an interactive

6    computer service or electronic communication service or

7    an electronic communication system in interstate

8    commerce, or any facility in interstate commerce, in

9    such a fashion that this harassment would attempt to

10   cause and reasonably be expected to cause substantial

11   emotional distress to the particular target, here

12   they're called "Victim 1" and "Victim 2."  So that's

13   what the goal of the conspiracy has to be.

14        And then the third thing the government has to

15   prove is that one of the conspirators -- not necessarily

16   you, but one of the conspirators did something to make

17   that conspiracy come about, to achieve the goal of that

18   conspiracy.

19        Now that's what the government has to prove on

20   cyberstalking.

21        The second count (Pause.) charges -- it is also a

22   conspiracy count, but that count has a different goal,

23   it has the same elements, but the specific intent is

24   different.  For instance -- and the conspiracy, or Count

25   2, the second charge is a conspiracy to tamper with a

1    witness.

2         So first they have to prove, each one of you

3    separately, agrees with one or the other conspirators,

4    that's the first thing, but here the goal, the specific

5    intent is to tamper with a witness, and by that it -- it

6    means what you would think it is, it would mean that you

7    engaged, knowing what you were doing, in misleading

8    conduct toward another person with the idea of

9    hindering, delaying, preventing, the communication, um,

10   of law enforcement officers in investigating criminal

11   matters.  That's the goal, that you've got to know that

12   that's what you're doing and you've got to agree to do

13   it.  And then third, at least one of the conspirators

14   has to do something to help that conspiracy come about.

15        Now, Ms. Popp, do you understand those charges as

16   I've explained them?

17        MS. POPP:  Yes, I do, your Honor.

18        THE COURT:  And, Ms. Zea, do you understand those

19   charges as I've explained them?

20        MS. ZEA:  Yes, your Honor.

21        THE COURT:  Now let's talk about your rights, and

22   each one of you has exactly the same rights, so I'll

23   talk to both of you together.

24        Each one of you has the right to a fair and an

25   impartial trial before a jury, a jury of the people, and

1    through your attorney you'll get some say on who sits on

2    that jury.  They will decide, not me.  At the trial the

3    government bears the burden of proof, beyond a

4    reasonable doubt, to prove that each of these charges,

5    as to each one of you separately, is proved beyond a

6    reasonable doubt.

7         You have the right to confront the witnesses

8    against you.  Now that means you'll sit right in court,

9    you can see the witnesses as they testify, but far more

10   important, your attorneys can question those witnesses

11   and cross-examine them, can seek to shape their stories,

12   you can call witnesses on your own behalf, make

13   arguments to the jury.  Each one of you can testify, but

14   that implicates another right, that you don't have to

15   testify, you don't have to say anything, you can be

16   completely silent and you can have your lawyers be

17   completely silent.  And I will tell the jury that you

18   start the trial an innocent person.  And those are the

19   words I'll use, I'll say, "These two people who" -- the

20   two of you who are on trial together, or "This person,"

21   "she is an innocent person and it's up to the government

22   to prove, beyond a reasonable doubt, that they're guilty

23   of the particular charge."

24        Now this business about being innocent, that

25   applies to me too in the sense that I have never met you

1    before.  I don't know anything about this case.  I've

2    read the papers, but they're not evidence of anything.

3    And I must take you as innocent people, and I do.  I

4    hear you say you want to plead guilty, but people want

5    to plead guilty for a variety of reasons.  As far as I'm

6    concerned, as we've talked now, you're innocent.

7          Also I should point out, um, though I see that

8    you've addressed it, the government has chosen to

9    proceed here by way of something they call an

10   "information."  An information is a perfectly good way

11   to charge someone with a crime if that person agrees to

12   forgo or waive an indictment.  If you don't waive an

13   indictment, the government first has to present their

14   evidence to a grand jury.

15         A grand jury sits in secret, you can't be there,

16   your attorney can't be there.  They don't decide whether

17   you're guilty or not guilty, they only vote by majority

18   vote, so it's not unanimous, and they only vote as to

19   whether there is probable cause to believe that you are

20   guilty.  But the advantage to a -- going before a grand

21   jury and seeing if they'll indict you is that if they

22   don't, if they return a no-bill -- they won't indict,

23   then the government cannot come after you for these

24   charges.  Now that's one of the rights you have here

25   too.

1          So let's start -- and I'll start with you,

2     Ms. Popp.  Do you understand that you have all those

3     rights that I've just been explaining?

4          MS. POPP:  I understand, your Honor.

5          THE COURT:  And you understand that if you plead

6     guilty, you're going to give all those rights up, that

7     you'll no longer have those rights, and I'll think

8     you're guilty.  But the one right you still do have is

9     you can be silent about this matter until I sentence

10    you.  But once I sentence you -- not today, but at an

11    appropriate time, once I sentence you, then if the

12    government is still investigating this or investigating

13    it further, then you have to tell what you know about

14    this matter because you don't have the Fifth Amendment

15    privilege, you're guilty and sentenced.

16         Do you understand?

17         MS. POPP:  I understand, your Honor.

18         THE COURT:  And you give up the right to be

19    indicted and you'll respond, when you're arraigned, to

20    this information.

21         You understand that?

22         MS. POPP:  I do.

23         THE COURT:  And, Ms. Zea, do you understand that

24    if you plead guilty, you're going to give up all

25    those -- well, first, do you understand those rights

1   that I was just explaining?

2        MS. ZEA:  Yes, your Honor.

3        THE COURT:  And if you plead guilty, you're giving

4   all those rights up here this afternoon except you can

5   be silent until I sentence you about these particular

6   crimes.

7        You understand that?

8        MS. ZEA:  I understand.

9        THE COURT:  And I have a waiver of indictment.

10  You thought this over with your attorney and you give up

11  your right to be indicted, is that right?

12       MS. ZEA:  Yes, sir.

13       THE COURT:  All right.  Now let's talk about what

14  may happen to you, and to address that -- and I see that

15  it's addressed in the plea agreement, but, um, I want

16  you to hear it from the United States Attorney.  Calling

17  on him now does not mean that he's the only one I'll

18  listen to, if you go through with this and plead guilty,

19  at a sentencing hearing I will listen to him, I will

20  listen to your attorney, and I will listen to you, and

21  then I will decide what an appropriate sentence is.  But

22  as he's the prosecuting attorney, you need to hear what

23  the worst is that could happen to you if you are guilty

24  of these charges.

25       Now turning to the United States Attorney.  You

1   understand my practice.  I want to know the top of the

2   sentencing guideline without regard to any guilty plea

3   and then, given the discount for the guilty plea, I want

4   to know the range the sentencing guidelines provide, and

5   since it's set forth in the plea agreement, I want to

6   hear from you what recommendation you're going to make

7   here.

8        MR. KOSTO:  Thank you, your Honor.  I'll start

9   with Ms. Popp, if that's okay?

10       THE COURT:  Yes.

11       MR. KOSTO:  So Ms. Popp's guideline sentencing

12   range, without respect to an adjustment for acceptance

13   of responsibility, is a Level 27, which would be 70 to

14   87 months under Criminal History Category 1.

15       THE COURT:  All right.  And with the plea?

16       MR. KOSTO:  And with the acceptance of

17   responsibility, her guideline sentencing range adjusts

18   to 51 to 63 months on an advisory basis and the

19   government has committed in a plea agreement to make a

20   recommendation of 41 months imprisonment.

21       THE COURT:  Thank you.  And as to Ms. Zea?

22       MS. ZEA:  As to Ms. Zea, her guideline sentencing

23   range, without the benefit of a plea before trial, is at

24   22, Criminal History Category 1, with a guidelines range

25   of 41 to 51 months.  With a 3-point adjustment for

1    acceptance of responsibility, that range adjusts to 30

2    to 37 months.  And the government has agreed, in the

3    plea agreement, to make a sentencing recommendation to

4    the Court of 30 months imprisonment.

5         THE COURT:  Thank you.

6         Going in the order that he did, Ms. Popp, um,

7    these ranges are advisory, that is I can go lower, but

8    as I read the Constitution of the United States, I can't

9    go higher than the highest number that he mentioned

10   because that would be simply the exercise of unfettered

11   discretion, which I have come to conclude the

12   Constitution now forbids in light of our guideline

13   sentencing framework.  But what he tells me is that if

14   you plead guilty here, I can sentence you to prison for

15   87 months.

16        Do you understand that?

17        MS. POPP:  I do, your Honor.

18        THE COURT:  And the sentencing commission, the

19   advice that they give me, the formal advice, is going to

20   be that I should sentence you to prison for not less

21   than 51 nor more than 63 months.

22        Do you understand that?

23        MS. POPP:  I do understand that, your Honor.

24        THE COURT:  Now the government, because you -- and

25   it's quite proper to have a plea agreement, they are

1  going to recommend that you actually go to prison for 41

2  months.

3         Do you understand that?

4         MS. POPP:  I do understand that, your Honor.

5         THE COURT:  Now I'm not bound by that.  At the

6  time of sentencing, I'll listen to your attorney, his

7  recommendations, and I'll listen to you, but you must

8  understand that I can go up as high as 87 months.

9         Do you know that?

10        MS. POPP:  Yes, I do, your Honor.

11        THE COURT:  All right.

12        Ms. Zea, in your case do you understand that as I

13 understand the Constitution, I can send you to prison

14 for 51 months.

15        Do you understand that?

16        MS. ZEA:  Yes, your Honor.

17        THE COURT:  And, um, whatever the recommendation

18 of this United States Attorney, the Sentencing

19 Commission tells me that I should sentence you to at

20 least 30, but no more than 37 months in prison.

21        Do you understand that?

22        MS. ZEA:  Yes.

23        THE COURT:  And they're going to recommend to me

24 30 months in prison -- 2 1/2 years.

25        Are you clear on that?

```
1            MS. ZEA:  (Silence.)

2            THE COURT:  I didn't hear you.  Did you answer?

3            MS. ZEA:  Oh, yes, sir.

4            THE COURT:  All right.

5            Now other than -- sticking with you, Ms. Zea, I

6     have a written plea agreement here and, um, looking at

7     it, it appears to be signed.

8            Is this your signature on the plea agreement?  If

9     it's the same one -- there's only one that I know of.

10    But you signed this, is that right?

11           MS. ZEA:  Yes.

12           THE COURT:  And you read it before you signed it?

13           MS. ZEA:  Excuse me.  Yes.

14           THE COURT:  Did you talk it all over with your

15    attorney?

16           MS. ZEA:  Yes.

17           THE COURT:  And you think you understand what's in

18    here?

19           MS. ZEA:  Yes.

20           THE COURT:  Now you know that this is your bargain

21    with the government, but I don't bargain -- I'm

22    forbidden from bargaining.  All it does is -- it's

23    perfectly all right to bargain with the government, but

24    when it comes on for sentencing, if you plead guilty, I

25    must sentence in accordance with the law, and I'll have
```

1    in mind all the arguments that are before me and the

2    complete record, but I'm not bound by any agreement you

3    have with the government.

4         Do you understand that?

5         MS. ZEA:  Yes.

6         THE COURT:  And other than this agreement, is

7    there any other agreement or promise that anyone made to

8    you to get you to plead guilty?

9         MS. ZEA:  No.

10        THE COURT:  Did anyone threaten you with anything

11   to get you to plead guilty?  In other words, say "If you

12   don't plead guilty, we're going to add more charges or

13   we're going to indict someone else," or something like

14   that, any threat of any sort?

15        MS. ZEA:  No.

16        THE COURT:  Now this is a conspiracy charge.  Are

17   you covering up for someone else by pleading guilty

18   yourself?

19        MS. ZEA:  No.

20        THE COURT:  Do you understand that these are

21   felony charges.  If you're guilty and sentenced for

22   these charges, never again in your entire life may you

23   possess a firearm or ammunition.

24        Do you understand that?

25        MS. ZEA:  Yes.

1        THE COURT:  If you're not a citizen of the United

2   States, you may be deported from the United States,

3   denied admission under the laws of the United States,

4   denied naturalization under the laws of the United

5   States.

6        Do you understand?

7        MS. ZEA:  Yes.

8        THE COURT:  All right.

9        Now, Ms. Popp, I likewise have a plea agreement in

10   your case and it bears what I take it is your signature.

11   Have you in fact signed this document?

12        MS. POPP:  I have, your Honor.

13        THE COURT:  Did you read it all before you signed

14   it?

15        MS. POPP:  I did read it.

16        THE COURT:  Have you talked it all over with your

17   attorney?

18        MS. POPP:  Yes, I have.

19        THE COURT:  Do you think you understand it?

20        MS. POPP:  I understand it, your Honor.

21        THE COURT:  Now, um, other than this agreement --

22   because these are promises by the government and they're

23   enforceable at least as against the government, is there

24   any other promise that was made to you to get you to

25   plead guilty?

1        MS. POPP:  No.

2        THE COURT:  Anyone threaten you with anything to

3   get you to plead guilty?

4        MS. POPP:  No.

5        THE COURT:  Are you covering up for someone else

6   by pleading guilty yourself?

7        MS. POPP:  No.

8        THE COURT:  As I said to Ms. Zea, you understand

9   that the way this is written, um -- and naturally I'll

10  take it into account, but I will impose the sentence

11  that in my judgment best accomplishes the goals of

12  sentencing within the parameters that I've described to

13  you.  I'm not bound by this.

14        You understand that?

15        MS. POPP:  I do, your Honor.

16        THE COURT:  Now you know if you plead guilty here,

17  um, these are felonies, you'll never ever be permitted

18  to have a firearm or ammunition thereafter.

19        Do you understand?

20        MS. POPP:  I do understand that, your Honor.

21        THE COURT:  And if you're not a citizen, then you

22  may be deported, denied naturalization, denied admission

23  to the United States.

24        Do you understand that?

25        MS. POPP:  Yes, I do.

1          THE COURT:  Have you talked all this over with

2     your attorney?

3          MS. POPP:  Yes, I have.

4          THE COURT:  Do you think -- and there's more than

5     one attorney here, but do you think your attorneys have

6     been good attorneys for you, gotten for you those things

7     that are your rights under the law?

8          MS. POPP:  Yes, I do.

9          THE COURT:  Are you satisfied with their

10    representation of you?

11         MS. POPP:  Yes, I am.

12         THE COURT:  Do you still want to plead guilty?

13         MS. POPP:  Yes, I do.

14         THE COURT:  Why?

15         MS. POPP:  Because I am guilty of those charges.

16         THE COURT:  All right.

17         And, Ms. Zea, have you talked all this over with

18    your attorney?

19         MS. ZEA:  Yes.

20         THE COURT:  And do you think he's been a good

21    attorney for you, gotten for you those things that are

22    your rights under the law?

23         MS. ZEA:  Yes.

24         THE COURT:  Are you satisfied with his

25    representation of you?

 1          MS. ZEA:  Yes.

 2          THE COURT:  Do you still want to plead guilty?

 3          MS. ZEA:  Yes.

 4          THE COURT:  Why?

 5          MS. ZEA:  Because I am guilty of the charges.

 6          THE COURT:  All right.  You said something more,

 7     you said, "Because I'm guilty" --

 8          MS. ZEA:  -- "of the charges."

 9          THE COURT:  "Of the charges."

10          Now I've got to be sure that the government has

11     enough evidence that if you went to trial, you could be

12     found guilty, each one of you, so I'm going to turn

13     again to the government lawyer and I'm go to ask him to

14     describe briefly, having in mind the essential elements

15     of the case -- just briefly, um, what he thinks he can

16     prove if the case went to trial.  And then I'm going to

17     ask each one of you separately if you understand what he

18     said, and then I'm going to ask, "Are those thing true?"

19          Counsel.

20          MR. KOSTO:  Thank you, your Honor.

21          Either before or after the factual basis, would

22     the Court be willing to inquire as to the appeal waiver

23     contained in both plea agreements to make sure

24     defendants are knowingly waiving those rights?

25          THE COURT:  That's not my practice.  They've said

 1    they understand it.  I think the appeal waiver, because

 2    it now -- you can understand that if they plead, I'm

 3    going to tell them they have a right to appeal.  Now it

 4    may be limited, but I am not going to make any further

 5    inquiry.  But it's perfectly appropriate for you to ask.

 6         Go ahead.

 7         MR. KOSTO:  Thank you, your Honor.

 8         Had this case proceeded to trial, the United

 9    States would have proven beyond a reasonable doubt each

10    of the elements of the two charged offenses in the

11    information through, among other evidence, witness

12    testimony, including the testimony of the witnesses

13    corroborating with the investigation, physical evidence,

14    um, electronic communications both to the victims

15    between and among the various co-conspirators and to and

16    from third parties, as well as business records gathered

17    during the course of the investigation.

18         That evidence would show that between

19    approximately August 5th, 2020 and August 23rd, 2020,

20    defendants Popp and Zea, who I'll describe as the

21    "pleading defendants," along with defendants Stephanie

22    Stockwell and Brian Gilbert, as well as

23    separately-charged co-conspirators Jim Baugh and David

24    Harville, Phil Cook, and others, all then employees or

25    contractors of eBay, Inc., the multinational eCommerce

1    company, agreed to engage in a stalking campaign

2    targeting a husband and wife who lived in Natick,

3    Massachusetts -- they're identified here as "Victim 1"

4    and "Victim 2," as they are in the information, and to

5    tamper with witnesses in the criminal investigation that

6    followed.  The campaign targeted Victim 1 and Victim 2

7    for their roles in publishing a newsletter that reported

8    on issues of interest to people who sold goods on eBay.

9    Senior executives, the evidence would show, at eBay were

10   frustrated with the newsletter's tone and content and

11   with the tone and content of comments that appeared

12   underneath the newsletter's article.

13          The stalking campaign arose --

14          THE COURT:  Let me interrupt you.

15          MR. KOSTO:  Yes, your Honor.

16          THE COURT:  You misspoke in one respect.  You, um

17   -- I believe you did.

18          You dated the conspiracy from a certain date in

19   August 2020 to other dates in August 2020.  You mean

20   2019?

21          MR. KOSTO:  I do mean that, your Honor.  I

22   apologize for the error.

23          THE COURT:  I have that in mind.  I've read the

24   documents.  Go right ahead.  Go ahead.

25          MR. KOSTO:  Thank you, your Honor.

1      The campaign arose from communications between

2  eBay senior executives and Jim Baugh, who was then

3  eBay's senior security officer, it was intended to

4  intimidate or harass the victims, and was a course of

5  conduct that included sending threatening communications

6  to the victims over Twitter, which is an instrumentality

7  of interstate commerce, ordering unwanted and securing

8  deliveries to the victims' home through Amazon and other

9  instrumentalities of interstate commerce, and to Zea's,

10  Harville's, Baugh's, and Popp's travel, from California

11  to Natick, to surveil the victims in their home and

12  community.

13      The deliveries ordered to the victims' homes -- a

14  home, included a book on surviving the death of a

15  spouse, a bloody pig mask, a fetal pig, a funeral

16  wreath, and various live insects.  The harassment also

17  featured Craig's List posts on the internet inviting the

18  public for sexual encounters or estate sales at the

19  victims' home.

20      The threatening Twitter messages were written to

21  Victim 1 and sometimes addressed to Victim 2 as if they

22  had been sent by eBay sellers who were unhappy with that

23  victim's coverage in the newsletter.  Some of these

24  messages posted the victims' address publicly on the

25  internet and threatened to visit the victims at their

1    home.  An August 22nd, 2019 message, for example, stated

2    "At" -- the name of the newsletter, "20 years of lies

3    and destroying families, don't be proud of that, you

4    worthless bitch.  I will destroy your family and

5    business too.  See how you like it.  @Elei_Tui, when are

6    we going to visit her in Natick?"

7         Defendant Baugh intended for the harassment and

8    intimidation to distract the victims from publishing the

9    newsletter, to change the newsletter's coverage of eBay,

10   and ultimately to enable eBay to contact the victims to

11   offer assistance with that harassment, what the

12   government has called a "White Night Strategy."  The

13   White Night Strategy would earn goodwill with the

14   victims such that they might help eBay learn the

15   identify of and discredit an individual named "Fido

16   Master," who posted online frequently and negatively

17   about eBay underneath the victims' newsletters and

18   articles.

19        Mr. Baugh and Mr. Harville and Ms. Zea also

20   traveled to Natick on August 15th.  Mr. Baugh and

21   Mr. Harville intended to install a GPS device on the

22   victims' car, but the car was safe in the victims'

23   garage.  The victims, however, spotted the surveillance

24   team on August 16th, which led them to call the Natick

25   Police Department in fear.

1          Ms. Zea, Mr. Baugh, and Ms. Popp, who arrived to

2     replace Mr. Harville on August 17th, continued

3     surveillance even after having been spotted by the

4     victims.  The Natick police, which was investigating the

5     deliveries, threats, and the surveillance, connected

6     Ms. Zea and Mr. Harville to two of the rented cars and

7     then to eBay, who they reached out to for assistance.

8          When the pleading defendants, and Ms. Stockwell,

9     Mr. Baugh, Mr. Gilbert, Mr. Cook, and Mr. Harville,

10    learned that NPD was making inquiries, they agreed to

11    prevent the Natick police from learning about the

12    harassment campaign.  With support from Ms. Stockwell,

13    Ms. Popp, Mr. Cook, Mr. Baugh, and others, Mr. Gilbert

14    made false statements directly to the NPD.  Both of the

15    pleading defendants, Ms. Popp and Ms. Zea, made false

16    statements to eBay in-house lawyers who were

17    investigating in response to the Natick police's

18    inquiries.  All the co-conspirators, the evidence would

19    show, either deleted digital evidence related to the

20    cyberstalking campaign or created records intended to

21    throw the Natick police off the trail.  As these events

22    were unfolding, the Natick police referred the victims'

23    harassment matter to the Federal Bureau of

24    Investigation.

25          The evidence would show that although not every

co-conspirator was aware of every act in furtherance of the cyberstalking campaign, each agreed to harass or intimidate the victims and to use the facilities of interstate commerce to engage in a course of conduct that caused or would reasonably be expected to cause substantial emotional distress to Victims 1 and 2. Specific to the each of the pleading defendants, on or about the dates below, they took the following steps in furtherance of a conspiracy that are described in Counts 1 and 2 of the information.

As to Ms. Zea, on August 6th, 2019, at a Safeway Supermarket in Santa Clara, at Mr. Baugh's direction, Ms. Zea wore a baseball cap and paid cash to purchase prepaid gift cards for use in ordering harassing deliveries.

On August 14th, 2019, again at Mr. Baugh's direction, at a San Jose area target, she purchased permanent markers for others to use in writing a message on the victims' property.

On August 14th, 2019, again at Mr. Baugh's direction, she registered herself and Mr. Harville to attend a software development conference in Boston as cover for their trip to Boston to surveil the victims.

And again on August 14th, 2020, Ms. Zea met at eBay headquarters with Mr. Baugh, Ms. Popp, Mr. Gilbert,

1   and Mr. Harville, to discuss the trip to Boston,

2   including the need to stop the harassing deliveries to

3   the victims so that the deliveries would not interfere

4   with the surveillance efforts.

5           On August 16th, 2020, at Mr. Harville's request,

6   Ms. Zea used the internet to locate a Boston hardware

7   store for Mr. Harville to purchase tools that he could

8   use to break into the victims' garage for purposes of

9   installing a GPS tracker on their car.

10          On August 21st, 2020, when an officer from the

11  Natick police department called Ms. Zea from the lobby

12  of Boston's Ritz Carlton Hotel, where the surveillance

13  team was staying, Ms. Zea falsely told the officer that

14  she had a call and could not speak with him, and then at

15  Mr. Baugh's direction, left the hotel to avoid the

16  officer's request to speak.

17          Finally as to Ms. Zea, on August 26th, 2020, she

18  gave a false explanation about the purpose of her trip

19  to Boston to eBay's counsel who was interviewing Ms. Zea

20  in response to the Natick police's request for

21  assistance.

22          As to Ms. Popp, among other evidence, on August

23  7th, 2019 -- beginning on August 7th, 2019 and

24  continuing through on or about August 22nd, 2020, she

25  used the Twitter accounts @Tui_Elei and @Elei_Tui to

1   send threatening messages to Victim 1, messages that

2   were either drafted or approved by Messieurs Baugh,

3   Cook, and/or Gilbert.

4       On August 15th, 2020, as the surveillance campaign

5   was underway, she monitored the Natick police Department

6   dispatch over the internet while Mr. Baugh and

7   Mr. Harville were attempting to install that GPS device

8   on one of the victim's cars.

9       On August 21st, 2020, together with Ms. Zea, she

10  took down Ms. Zea's linkedIn file from the internet in

11  an effort to avoid having the Natick Police Department

12  connect the victims of harassment to eBay based on

13  Ms. Zea's public employment page.

14      On August 21st, 2020, at Mr. Baugh's direction --

15  excuse me, 2019, your Honor, at Mr. Baugh's direction,

16  already aware that the Natick Police Department had

17  confronted Mr. Zea at the Ritz Carlton about her

18  involvement with the harassment, Ms. Popps sent and

19  compiled Twitter messages that continued to threaten the

20  victims so that Mr. Gilbert could offer assistance to

21  the police about those messages and about the

22  harassment, the so-called "White Night Campaign."

23      And finally on the 25th of August 2019, at

24  Mr. Baugh's direction, Ms. Popp deleted evidence in the

25  form of "WhatsApp" messages and other digital content

1    related to the harassment campaign through their cell

2    phones.

3          Together, your Honor, as to each defendant, the

4    United States respectfully submits that the evidence it

5    offers would provide the Court with an adequate factual

6    basis to accept each of the defendants pleas to each of

7    the counts contained in the information both as to the

8    conspiracy to cyberstalk and the conspiracy to witness

9    tampering in or about August of 2019.

10         Thank you.

11         THE COURT:  Now, Ms. Popp, did you hear what

12   counsel had to say?

13         MS. POPP:  Yes, I did, your Honor.

14         THE COURT:  Now by his own statement he's not

15   suggesting that you knew all of that, but all of those

16   things that you did know and those things that he said

17   you did, are all those things true?

18         MS. POPP:  Yes, they are, your Honor.

19         THE COURT:  And, Ms. Zea, the same for you.  He's

20   not suggesting that you knew all of that.  But as to

21   those things that you did know and as to the specific

22   things he said that you did, are those things true?

23         MS. ZEA:  Yes.

24         THE COURT:  So again I'll put it to you, Ms. Zea.

25   If I understand it, you're pleading guilty here because

1    you recognize you're guilty of these two conspiracy

2    charges, is that right?

3         MS. ZEA:  Yes, your Honor.

4         THE COURT:  And, Ms. Popp, you're pleading guilty

5    because you recognize you are guilty of these two

6    charges, is that correct?

7         MS. POPP:  That is correct, your Honor.

8         THE COURT:  Very well.  I find that Stephanie Popp

9    and Veronica Zea knowingly, intelligently, and

10   voluntarily, exercise their right to plead guilty when

11   arraigned -- and once I've explained one more thing, the

12   Clerk may arraign them on these charges.

13        Ms. Popp, have you read the information in this

14   case?

15        MS. POPP:  Yes, I have.

16        THE COURT:  Going back to the days when many

17   people couldn't read, when you come to be arraigned, you

18   have the right to have the Clerk read the charges in

19   open court.

20        Do you want her to read the charges now?

21        MS. POPP:  Um, no.

22        THE COURT:  You don't have to, and most people

23   don't, but I want to be sure you know you have the right

24   to hear her read them before you plea.

25        Do you want her to read them?

```
 1            MS. POPP:  No, I do not.

 2            THE COURT:  Okay, she waives the reading of the

 3     information.

 4            And, Ms. Zea, I've explained why.  Do you want her

 5     to read -- have you read the charges against you in this

 6     case?

 7            MS. ZEA:  Yes, your Honor.

 8            THE COURT:  Do you want the Clerk now to read the

 9     charges?

10            MS. ZEA:  No, your Honor.

11            THE COURT:  Very well.  The Clerk may arraign

12     Ms. Popp and Ms. Zea.

13            This is the key point in a most serious

14     proceeding.  The Clerk's going to -- using the proper

15     legal words, she's going to ask how you plead, guilty or

16     not guilty.  If you say "guilty" when the Clerk is

17     asking you, then you're guilty, no taking it back or

18     starting over.

19            Do you understand, Ms. Popp?

20            MS. POPP:  I do understand that, your Honor.

21            THE COURT:  Do you understand, Ms. Zea?

22            MS. ZEA:  Yes, your Honor.

23            THE COURT:  The Clerk may arraign both

24     individuals.

25            THE CLERK:  Stephanie Popp and Veronica Zea, the
```

1    United States Attorney has charged you both in a

2    two-count information.  Within Count 1, conspiracy to

3    commit cyberstalking, in violation of Title 18, United

4    States Code, Section 371.  In Count 2, conspiracy to

5    tamper with a witness in violation of Title 18, United

6    States Code, Section 371.

7         Ms. Popp, how do you now plead to Counts 1 and 2,

8    "guilty" or "not guilty"?

9         MS. POPP:  Guilty.

10        THE CLERK:  Ms. Zea, how do you now plead to

11   Counts 1 and 2, "guilty" or "not guilty"?

12        MS. ZEA:  Guilty.

13        THE COURT:  The Clerk will suggest a date for

14   sentencing.

15        (Pause.)

16        THE CLERK:  Thursday, February 25th at 2:00 p.m.

17        THE COURT:  Is that satisfactory to the

18   government, Thursday the 25th of February at 2:00 p.m.?

19        MR. KOSTO:  Thank you, your Honor, it is.

20        THE COURT:  And, Mr. Bookbinder, is that

21   satisfactory to you?

22        MR. BOOKBINDER:  It is satisfactory to me.  I

23   believe it is to Ms. Popp as well, but she can let the

24   Court know if it's not.

25        THE COURT:  All right.

1      And, Mr. Ubhaus, is that satisfactory?

2      MR. UBHAUS:  It is, your Honor, and it is with

3  Ms. Zea as well.

4      THE COURT:  Thank you.  And that will be the date,

5  at 2:00 p.m.

6      Now, would each one of you -- and I'm talking to

7  defense counsel, would you see to it that your clients

8  promptly make themselves available for an interview with

9  probation so we may start the preparation of a

10  presentence report.

11      Mr. Bookbinder?

12      MR. BOOKBINDER:  I will, your Honor.

13      THE COURT:  And Mr. Ubhaus?

14      MR. UBHAUS:  Yes, your Honor.

15      THE COURT:  And I take it that the government, um,

16  now that they're arraigned, what do you suggest for, um

17  -- the situation has changed, you have no objection to

18  they're remaining at liberty, so what do you propose?

19      MR. KOSTO:  We do not object to they're remaining

20  at liberty, your Honor.

21      And both defendants were interviewed by the

22  probation office in the presence of counsel over the

23  summer in anticipation of their appearance here today.

24  I believe the probation office has made a similar

25  recommendation with respect to conditions of release

1    pending sentencing for both of them, and the government

2    is in agreement with the recommendations that the

3    probation office made.  I'd be happy to summarize them,

4    but, um --

5            THE COURT:  No, that's not necessary.  Unless I

6    hear an objection, those recommendations are adopted and

7    those will be the terms of presentence release.

8            Those are the terms and I think we are ready to

9    recess.  Thank you all.  We'll recess.

10               (Ends, 3:00 p.m.)

11

12               C E R T I F I C A T E

13

14        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

15   do hereby certify that the foregoing record is a true

16   and accurate transcription of my stenographic notes

17   before Judge William G. Young, on Thursday, October 8,

18   2020, to the best of my skill and ability.

19

20

21

22   /s/ Richard H. Romanow 10-19-20

23   _____
     RICHARD H. ROMANOW    Date

24

25